# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Sentry Select Insurance Company, ) | Civil Action No. 5:15-cv-04984-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Maybank Law Firm, LLC, and Roy P. ) | |
| Maybank, ) | |
| Defendants. ) | |
| ) | |

Plaintiff Sentry Select Insurance Company filed this action seeking monetary damages for legal malpractice against Defendants Maybank Law Firm, LLC, and Roy P. Maybank (together "Defendants"). (ECF No. 63.)

This matter is before the court to consider the parties' cross Motions for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiff's Motion to Bifurcate. (ECF Nos. 104, 108.) For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **DENIES** Plaintiff's Motion to Bifurcate.

## I.     RELEVANT BACKGROUND TO PENDING MOTIONS

Plaintiff retained Defendants to represent Plaintiff's insureds who were the defendants in a personal injury case entitled *Wanda Rivers v. Herman Shaw, Wall Street Syss., Inc. and Madison Intermodal, LLC*, Case No. 2012-CP-38-1073 (Orangeburg Cty. Ct. Com. Pl. Aug. 7, 2012) (the "Underlying Action").[1] (*See* ECF No. 104-2.) In the Underlying Action, Wanda Rivers sued

---

[1] In its submissions, Plaintiff asserts that its insureds were insured under a policy providing $1,000,000.00 collision coverage. (*See, e.g.*, ECF No. 63 at 4 ¶ 15, 7 ¶ 29.) Moreover, the parties generally acknowledge in their submissions that Defendants were retained by Plaintiff to represent its insureds in the Underlying Action. (*See, e.g.*, ECF Nos. 63 at 4 ¶ 16, 108-1 at 1.) However, there are no copies in the record of an existing insurance policy between Plaintiff and its insureds or between Plaintiff and Defendants. The court observes that because the resolution of these facts

Plaintiff's insureds seeking to recover damages for injuries resulting from a collision between her automobile and their tractor trailer. (*Id.* at 6 ¶ 6.) Most relevant in this action and during the litigation of the Underlying Action, Rivers served on Plaintiff's insureds the following requests to admit on January 25, 2013:

> Request 1: Please admit that the Defendant Herman Shaw was negligent in stopping in the roadway on September 14, 2010 causing the Plaintiff to strike the tractor trailer operated by Defendant Herman Shaw.
>
> Request 2: Please admit that the tractor trailer operated by Defendant Herman Shaw at the time of the collision did not have proper lights to warn Plaintiff that said tractor trailer was stopped in the roadway.
>
> Request 3: Please admit that the Defendants' negligence was the proximate cause of the Plaintiff's injuries.
>
> Request 4: Please admit that the Defendants are liable for the damages sustained by the Plaintiff in the September 14, 2010 wreck.
>
> Request 5: Please admit that the Driver Vehicle Report Number SCT211001534, dated September 14, 2010 reflected: a) the driver's record of duty status was not current on September 14, 2010; b) the tractor was cited for axle 3 right side 1 of 10 wheel fasteners loose; c) the tractor [was] cited for inoperative left side turn signals front and rear; d) the tractor [was] cited for inoperative hazard warning lamps left side front and rear; e) the tractor [was] cited for inoperable head lamp left side; f) the tractor [was] cited for unsecured fire extinguisher; and g) the tractor [was] cited for inoperative stop lamp left side.
>
> Request 6: Please admit that on September 14, 2010, the collision took place at approximately 6:50 am.
>
> Request 7: Please admit that at the time of the collision on September 14, 2010, there were no vehicles in the lane of traffic directly in front of the tractor trailer operated by Herman Shaw immediately prior to the collision.

(ECF No. 104-5 at 2–3.) Defendants did not submit responses to the aforementioned requests to admit on behalf of Plaintiff's insureds within thirty (30) days, thereby rendering the facts referenced in the requests to admit conclusively established. *See* Rule 36, SCRCP ("The matter is

---

do not affect the issues at hand, for the purposes of deciding the pending Motions, the court will consider it undisputed that such policy exists, establishing a contractual obligation for Plaintiff to provide its insureds with counsel. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact... the court may... consider the fact undisputed for the purposes of the motion; . . . .").

admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as stipulated in writing by the parties pursuant to Rules 29 and 6(b), the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, . . . ."). Thereafter, on September 5, 2013, Defendants filed a motion for extension of time to respond to the requests to admit or, in the alternative, to withdraw their admissions. (ECF No. 104-6.) On September 25, 2013, the state trial court held a hearing on the motion for extension of time (*see* ECF No. 104-8) and conveyed to the parties that it would "get back to you all with what I'm going to do." (*Id.* at 26:4–5.)

On January 10, 2014, Rivers' counsel sent correspondence pursuant to *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.E. 346 (S.C. 1933), to Defendants requesting the limits of Plaintiff's insurance policy with its insureds.[2] (ECF No. 108-3 at 3.) On January 28, 2014, Plaintiff asked attorney Bradish J. Waring to represent its insureds at a mediation between them and Rivers that was scheduled to occur on January 30, 2014. (ECF No. 108-5 at 6:4–22.) On January 30, 2014, Waring sent an e-mail to Plaintiff's representative in which Waring recommended that Plaintiff should settle Rivers' claim for $900,000.00 and pursue a malpractice claim against Defendants thereafter. (ECF No. 108-6 at 1.) Rivers agreed to accept $900,000.00 to settle her claims against Plaintiff's insureds.[3] (ECF No. 108-7 at 7:8–14.)

On December 17, 2015, Plaintiff filed a Complaint against Defendants asserting claims sounding in legal malpractice for negligence/assignment of claim, breach of contract/intended

---

[2] In *Tyger River*, the South Carolina Supreme Court held "that an insurer's unreasonable refusal to settle within policy limits subjects the insurer to tort liability." *Skinner v. Horace Mann Ins. Co.*, 369 F. Supp. 3d 649, 652 n.7 (D.S.C. Feb. 26, 2019) (quoting *Nichols v. State Farm*, 306 S.E.2d 616, 618 (S.C. 1983)).

[3] Similarly to the insurance policy discussed above, there does not appear to be any specific document establishing the existence of the settlement in the record. However, the court will also consider this fact undisputed for purposes of the pending Motions based on its consideration of the assertions made in the parties' respective submissions.

third party beneficiary, negligence, breach of contract, and breach of fiduciary duty. (ECF No. 1 at 8 ¶ 33–14 ¶ 66.) On January 25, 2016, Defendants moved to dismiss Plaintiff's Complaint on the grounds that Plaintiff, as a third-party non-client insurer, lacked standing to sue Defendants for legal malpractice. (ECF No. 6.) After hearing argument from the parties on April 20, 2016 (*see* ECF No. 16), the court denied Defendants' Motion to Dismiss with leave to re-file and certified the following two (2) questions to the South Carolina Supreme Court on June 21, 2016:

1. Whether an insurer may maintain a direct malpractice action against counsel hired to represent its insured where the insurance company has a duty to defend?

2. Whether a legal malpractice claim may be assigned to a third-party who is responsible for payment of legal fees and any judgments incurred as a result of the litigation in which the alleged malpractice arose?

(ECF No. 17 at 9.) While the certified questions were pending in the South Carolina Supreme Court, the court granted Plaintiff's Motion to Amend Complaint (ECF No. 23) on December 12, 2016, which Amended Complaint (ECF No. 35) added a sixth claim for equitable subrogation. (*Id.* at 14 ¶ 67–16 ¶ 77.) On March 6, 2019, the South Carolina Supreme Court answered "Yes" to certified question no. 1 and declined to answer certified question no. 2. (ECF No. 57 at 2.) Subsequently, on April 19, 2019, Plaintiff filed a Second Amended Complaint in which it only asserted a claim against Defendants for negligence/sentry liability. (ECF No. 63 at 9 ¶ 36–13 ¶ 58.) However, in the "wherefore clause," Plaintiff asked for "actual damages, punitive damages . . . costs . . . prejudgment interest . . . reimbursement of attorney's fees paid to Defendants as both actual damages and disgorgement of the fees; and such other and further relief as the court deems just and proper." (*Id.* at 13–14.)

On August 14, 2020, Plaintiff filed its Motion for Summary Judgment or, in the Alternative, Motion for Bifurcation of Issues. (ECF No. 104.) Thereafter, on August 21, 2020, Defendants filed their Motion for Summary Judgment. (ECF No. 108.) The parties oppose the

respective Motions for Summary Judgment.  (*See* ECF Nos. 109, 124.)

The court considers the merits of the parties' respective Motions below.

## II.     JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), based on Plaintiff's allegations that the action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00.[4]  (*See* ECF No. 63 at 3 ¶ 11.)  For jurisdictional purposes, Plaintiff alleges that it is "a citizen of and headquartered in a different state than that from all of the Defendants."  (*Id.*)  Moreover, after considering the Second Amended Complaint's allegations, the court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  (*See id.* ¶ 9.)

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).  In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party

---

[4] Because the court sits in diversity jurisdiction, state substantive law must be used to adjudicate Plaintiff's state law claim.  *See Auer v. Kawasaki Motors Corp.*, 830 F.2d 535, 537 (4th Cir. 1987) ("[A] federal court called upon to adjudicate a state law claim in the diversity jurisdiction must apply the relevant state law in determining the substantive rights and duties of the parties, while applying federal law to matters of procedure." (citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938))).

may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV.     ANALYSIS

A.     The Parties' Arguments

Plaintiff opposes Defendants' Motion for Summary Judgment (*see* ECF No. 124) and argues it is entitled to summary judgment on its claim(s) because "[i]t is undisputed that the Plaintiff hired the Defendants to represent its insured . . . in the underlying case and that, during the course of that representation, [] Defendants failed to timely respond to Requests to Admit." (ECF No. 104-1 at 7–8.) To this point, Plaintiff asserts that "'[b]ut for [] Defendants' failure to timely respond to the Requests to Admit, []Plaintiff would not have been facing a potential trial on the sole issue of damages" and "would have been able to put up a meritorious defense at trial." (*Id.* at 9.) As a result, Plaintiff contends that "there is no genuine dispute that [] Defendants owed [] Plaintiff's insured a duty, breached that duty and thus proximately caused Plaintiff[']s[] damages, that being the amount paid to settle this case, Nine Hundred Thousand ($900,000)." (*Id.* at 15.) Alternatively, if its Motion for Summary Judgment is denied, Plaintiff asserts that the court should, pursuant to Rule 42(b), bifurcate the issues and first try "the issue of what should have occurred in the underlying litigation 'but for' [] Defendants' negligence." (ECF No. 104-1 at 16.) In this regard, Plaintiff argues that "[r]esolving the underlying case simplifies the remaining issues

for the malpractice case." (*Id.*)

Defendants oppose Plaintiff's Motion for Summary Judgment (*see* ECF No. 109) and argue that they are entitled to summary judgment because Plaintiff cannot show "by clear and convincing evidence that 'but for' [Defendant] Maybank's failure to respond to requests to admit within thirty days, [Plaintiff]'s insured would have [either] been successful in the underlying suit" or "would have achieved a better result in the underlying case." (ECF No. 108-1 at 9, 12.) Specifically, Defendants assert that there is not clear and convincing evidence that Plaintiff's insureds would have been successful in the Underlying Action "but for" Defendants' "failure to respond to requests to admit within thirty days." (*Id.* at 9.) In this regard, Defendants assert that "the undisputed and objective evidence is clear that the requests to admit were not the proximate cause of [Plaintiff] paying $900,000 to settle the case." (*Id.* at 13.) Therefore, Defendants assert they are entitled to judgment as a matter of law. (*Id.*)

Defendants next argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because its evidence fails to demonstrate "by clear and convincing evidence that [Defendant] Maybank's inadvertent mistake in failing to respond to requests to admit within thirty days was reckless, willful or wanton and committed in a manner in which [Defendant] Maybank would have been conscious that it was an invasion of [Plaintiff]'s rights." (*Id.* at 16 (citing, *e.g.*, *Rogers v. Florence Printing Co.*, 106 S.E.2d 258 (S.C. 1958)).) Defendants argue that they are entitled to summary judgment on Plaintiff's request for disgorgement because (1) there are no South Carolina cases "recognizing a claim for disgorgement or forfeiture of attorney's fees" and (2) Plaintiff "does not have standing to claim disgorgement of attorney's fees" because Defendant Maybank did not owe any fiduciary duties to Plaintiff. (*Id.* at 19 (citing *Southern v. Bishoff*, 675 F. App'x 239, 251–252 (4th Cir. 2017) (categorizing a claim for forfeiture of attorney's fees as

one for breach of fiduciary duty)).)  Finally, Defendants argue that Plaintiff's request for prejudgment interest fails because prejudgment interest is only authorized "on a claim of liquidated damages; *i.e.*, the sum is certain or capable of being reduced to certainty based on a mathematical calculation previously agreed to by the parties." (*Id.* at 20 (quoting *Butler Contracting, Inc. v. Court St.*, LLC, 631 S.E.2d 252, 258–259 (S.C. 2006)).)

B.   The Court's Review

   1.   *Plaintiff's Claim for Negligence*

The parties respectively contend that they are entitled to summary judgment on Plaintiff's claim for negligence sounding in legal malpractice. "In South Carolina, the plaintiff in a legal malpractice suit must prove several elements: (1) the existence of an attorney-client relationship; (2) a breach of duty by the attorney; (3) damage to the client; and (4) proximate cause of the plaintiff's damages by the breach." *Hall v. Fedor*, 561 S.E.2d 654, 656 (S.C. Ct. App. 2002) (citations omitted).  An insurer, like Plaintiff, "may bring a direct [legal] malpractice action against counsel hired to represent its insured" for breach of duty to the client when "the insurer proves the breach is the proximate cause of damages to the insurer." *Sentry Select Ins. Co. v. Maybank Law Firm, LLC*, 826 S.E.2d 270, 272 (S.C. 2019).  In a case in which an insurer brings "an action against the lawyer it hires to represent its insured, the insurer must prove its case by clear and convincing evidence." *Sentry Select Ins. Co.*, 826 S.E.2d at 273.

Upon its review, the court observes that there does not appear to be a dispute regarding the first three elements of a legal malpractice claim. (*See, e.g.*, ECF Nos. 108-1 at 8 ("Maybank does not dispute that a failure by an attorney to timely respond to requests to admit is an error."), 104-1 at 8 ("There is no dispute that Defendant Maybank breached the duty of care.").)  The dispute in this matter centers on whether Defendants' error was the proximate cause of any damages

sustained by Plaintiff.

"The [] burden of establishing proximate cause in a legal malpractice action requires that [t]he [plaintiff] prove that he would have obtained a better result in the underlying matter if the attorney had exercised reasonable care." *Doe v. Howe*, 626 S.E.2d 25, 32 (S.C. Ct. App. 2005) (quoting David A. Barry, *Legal Malpractice in Massachusetts: Recent Developments*, 78 Mass. L. Rev. 74, 79 (1993) (footnotes omitted)). "This burden does not necessarily compel the client to demonstrate that he would have won the underlying case." *Id.* "Rather, it is enough for the legal malpractice plaintiff to show that he has lost a valuable right; *e.g.*, the settlement value of the underlying case." *Id.* "Ordinarily, the question of proximate cause is one of fact for the jury." *Bailey v. Segars*, 550 S.E.2d 910, 914 (S.C. Ct. App. 2001) (citation omitted). Nevertheless, "the court may decide proximate cause as a matter of law 'when the evidence is susceptible to only one inference.'" *Tuten v. Joel*, 763 S.E.2d 54, 61 (S.C. Ct. App. 2014) (quoting *Pope v. Heritage Cmtys., Inc.*, 717 S.E.2d 765, 771 (S.C. Ct. App. 2011)).

In this case, Plaintiff asserts that the evidence supports a finding that Defendants' breach proximately caused it $900,000.00 in damages, which is the amount that resolved the Underlying Action. (*E.g.*, ECF No. 104-1 at 10.) Defendants counter with the assertion that Plaintiff cannot demonstrate proximate causation because the $900,000.00 settlement would not have occurred if Plaintiff had allowed the state trial court to address Defendants' motion for extension of time to respond to the requests to admit or withdraw their admissions. (ECF No. 108-1 at 13.) Upon consideration of the foregoing, the court finds that the parties' divergent positions regarding the evidence do not create a circumstance where this court should resolve the issue of proximate cause at this stage of the litigation. Accordingly, the court denies the parties' cross Motions for Summary Judgment (ECF Nos. 104, 108) because there are genuine issues of material fact regarding the

proximate cause of Plaintiff's damages that must be resolved by a jury.

> 2.     *Plaintiff's Motion for Bifurcation*

Plaintiff moves the court to bifurcate the trial of this matter into a phase trying "the issue of what should have occurred in the [U]nderlying [Ac]tion 'but for' [] Defendants' negligence" and a phase trying "any remaining issues in this case." (ECF No. 104-1 at 16.) Plaintiff asserts that "[r]esolving the underlying case simplifies the remaining issues for the malpractice case." (*Id.*) Defendants oppose bifurcation of the trial arguing that liability and damages are too closely intertwined for bifurcation and Plaintiff's request "ignores that it decided to settle the case before the [Underlying Action] was fully developed." (ECF No. 109 at 13.)

Under the Federal Rules of Civil Procedure, a court may order separate trials of any claims or issues for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In considering the parties' respective positions, the court in its discretion finds that Plaintiff has not sufficiently demonstrated that bifurcating the trial will promote convenience, economy, or avoid prejudice. *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1954) ("Under Rule 42(b) of the Federal Rules of Civil Procedure, the granting of separate trials is within the sound discretion of the trial judge"); *Bedser v. Horton Motor Lines, Inc.*, 122 F.2d 406, 407 (4th Cir. 1941) ("[W]e are of the opinion that the granting of a motion for separate trial, under the circumstances here, was a matter within the sound discretion of the trial judge and that in this case there was no abuse of discretion."). Therefore, the court denies Plaintiff's Motion to Bifurcate the Trial of this case.

> 3.     *Plaintiff's Request for Punitive Damages*

Defendants maintain that Plaintiff's claim for punitive damages fails because it cannot "show by clear and convincing evidence that [Defendant] Maybank's conduct was willful, wanton, or in reckless disregard for his client's rights." (ECF No. 108-1 at 17.)

In an action brought under the court's diversity jurisdiction, state law governs the issue of whether punitive damages are permitted. *See, e.g.*, *Buchwald v. Renco Group*, 539 B.R. 31, 53 (S.D.N.Y. 2015) ("The availability of punitive damages on state claims in federal courts is generally governed by state law under Erie.") (citing *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989)); *Jenkins v. Immedia, Inc.*, C/A No. 13-cv-00327-CMA-KLM, 2019 WL 1875501, at *5 (D. Colo. April 25, 2019) (holding that state substantive law applied to Plaintiff's claim for punitive damages in assessing whether punitive damages were permitted); *Ayres v. AG Processing, Inc.*, 04-2060-DJW, 2015 WL 1799261, at *3 (D. Kan. July 22, 2005) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. The issue of whether punitive damages are permitted is governed by state substantive law."). "In order for a plaintiff to recover punitive damages [under South Carolina law], there must be evidence the defendant's conduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Taylor v. Medenica*, 479 S.E.2d 35, 46 (S.C. 1996) (citation omitted). "A tort is characterized as reckless, willful or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence would have been conscious of it as an invasion of the plaintiff's rights." *Id.* (citation omitted). "A conscious failure to exercise due care constitutes willfulness." *Id.* "The plaintiff has the burden of proving punitive damages by clear and convincing evidence." *Id.* (citing S.C. Code Ann. § 15-33-135 (Supp. 1995)).

Upon the court's consideration of the evidence, there remains a question of material fact as to whether Defendants' failure to respond to requests to admit in the Underlying Action could be found by a jury to be reckless and willful, thereby resulting in an award to Plaintiff of punitive damages. Thus, the court denies Defendants' Motion for Summary Judgment as to punitive

damages.

        4.      *Plaintiff's Request for Disgorgement of Attorney's Fees Paid to Defendants*

Defendants argue that Plaintiff's request for disgorgement of all attorney's fees paid to Defendants fails because they did not owe a duty to Plaintiff, which lacks standing to claim disgorgement. (ECF No. 108-1 at 19.) Plaintiff responds to Defendants arguing that the purpose of tort law policy is to make a plaintiff whole and Plaintiff in this case should be reimbursed legal fees paid to Defendants. (ECF No. 124 at 9.)

At the outset, the court observes that it was only able to locate one South Carolina appellate court decision that expressly addressed a party's request for disgorgement of attorney's fees. *See Tyler v. Salley*, No. 2004-UP-189, 2004 WL 6250803, at *3 (S.C. Ct. App. 2004) ("Tyler contends that the trial court erred in refusing to disgorge attorney's fees paid to the attorney hired by Salley to assist her in her role as personal representative. We disagree."). Generally, in South Carolina, "[d]isgorgement is an equitable remedy" and has been tied to claims associated with unjust enrichment and breach of fiduciary duty. *Verenes v. Alvanos*, 690 S.E.2d 771, 774 (S.C. 2010). *See also U.S. S.E.C. v. Staples*, 55 F. Supp. 3d 831, 838–39 n.8 (D.S.C. 2014) ("Disgorgement is an equitable remedy designed to prevent the unjust enrichment of the wrongdoer and to deter others from violating [] laws.").

Upon consideration of the foregoing, the court observes that Plaintiff's current active pleading, its Second Amended Complaint, does not allege claims for either a breach of fiduciary duty owed to it[5] or unjust enrichment. (*See* ECF No. 63.) Moreover, after considering all available South Carolina appellate court rulings, the court is unable to conclude that South Carolina

---

[5] In *Sentry Select Ins. Co.*, the South Carolina Supreme Court reiterated that "[w]hen an insurer hires an attorney to represent its insured, . . . the attorney owes the client—not the insurer—a fiduciary duty." 826 S.E.2d at 271.

recognizes disgorgement as a remedy for a negligence claim sounding in legal malpractice. Therefore, the court grants Defendants' Motion for Summary Judgment as to Plaintiff's request for disgorgement of attorney's fees.

    *5.      Plaintiff's Request for Prejudgment Interest*

Defendants contend that Plaintiff is not entitled to prejudgment interest as to its damages request.

"[South Carolina] law allows prejudgment interest on obligations to pay money from the time when, either by agreement or by operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty, even if the parties do not agree on the amount of the obligation." *Brooklyn Bridge, Inc. v. S.C. Ins. Co.*, 420 S.E.2d 511, 513 (S.C. Ct. App. 1992) (citation omitted). "The fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest." *Smith-Hunter Constr. Co., Inc. v. Hopson*, 616 S.E.2d 419, 421 (S.C. 2005) (citation omitted). "The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Id.* (citation omitted).

Upon its review of relevant South Carolina law, the court is persuaded that if the jury finds for Plaintiff that Defendants' breach of duty caused its damages, the damages were liquidated, a sum certain, or capable of being reduced to certainty as of the day the Underlying Action was settled. Accordingly, the court denies Defendants' Motion for Summary Judgment as to Plaintiff's request for prejudgment interest.

### V.   CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** the Motion for

Summary Judgment of Plaintiff Sentry Select Insurance Company (ECF No. 104) and **DENIES** its Motion in the alternative to Bifurcate. (*Id.*) The court **GRANTS** the Motion for Summary Judgment of Defendants Maybank Law Firm, LLC, and Roy P. Maybank (ECF No. 108) as to Plaintiff's request for disgorgement of attorney's fees, but **DENIES** Defendants' Motion for Summary Judgment in all remaining aspects. The matter will proceed to trial in accordance with the schedule previously announced by the court. (*See* ECF No. 84.)

    **IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 5, 2020
Columbia, South Carolina